IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KEVIN M. HOWARD,

        Plaintiff,

    v.

MICHAEL J. ASTRUE,

        Defendant.
_____

Civil No. 07-365-PK

OPINION AND ORDER

PAPAK, Magistrate Judge:

    Plaintiff Kevin M. Howard ("Howard") seeks judicial review of the Social Security Commissioner's final decision denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income under Titles II and XVI of the Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). All parties have consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure

1 - OPINION AND ORDER

73 and 28 U.S.C. § 636(c). For the reasons that follow, the Commissioner's decision is affirmed.

## BACKGROUND

Born in 1958, Howard has a tenth grade education and alleges illiteracy. Tr. 132, 165, 171.[1] Howard filed applications for DIB and SSI benefits on June 1, 2000, alleging disability due to syncopal episodes and a thrombus.[2] Tr. 132-34, 165, 519-21. The Social Security Agency denied his applications initially and upon reconsideration. Tr. 29-32, 38-42, 523-27, 529-33. After a July 2002 hearing before an Administrative Law Judge ("ALJ"), the ALJ found Howard not disabled on April 8, 2003. Tr. 13-26, 534-45. Howard appealed that decision to this court, and on January 18, 2005, the district court remanded the matter for further proceedings. Tr. 615-30.

A second hearing was held before the ALJ on February 4, 2006, and a third hearing was held on May 4, 2006. Tr. 839-44, 845-78. On May 25, 2006, the ALJ again affirmed the Commissioner's decision. Tr. 598-608. The Appeals Council denied review of the ALJ's decision. Tr. 587-89. This action made the ALJ's May 2006 decision the Commissioner's final decision, from which Howard filed this appeal.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920,

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer July 24, 2007 (Docket #17).

[2] A thrombus is an "aggregation of platelets, fibrin, clotting factors, and the cellular elements of the blood attached to the interior wall of a vein or artery." Kenneth N. Anderson et al. eds., *Mosby's Medical, Nursing, & Allied Health Dictionary* (5th ed. 1998).

2 - OPINION AND ORDER

*Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Howard challenges the ALJ's evaluation of the evidence, in light of this court's remand order, and his conclusions at step five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.* At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the ALJ determines the impairment meets or equals a listed impairment, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e), Social Security Ruling ("SSR") 96-8p. The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the ALJ finds the claimant can do his past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999), 20 C.F.R. §§ 404.1520(a)(4)(v),

3 - OPINION AND ORDER

404.1520(g), 416.920(a)(4)(v), 416.920(g).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(g), 416.966, 416.920(g).

## THE ALJ'S FINDINGS

At step one in the sequential proceedings, the ALJ found that Howard had not engaged in substantial gainful activity. Tr. 600. The ALJ found that Howard had the following "severe" impairments at step two: "lumbar degenerative disc disease with a herniated disc at L4-5, status post successful microdisectomy, and ongoing polysubstance abuse." *Id.* The ALJ subsequently found Howard's allegations regarding his limitations not credible (tr. 604) and evaluated Howard's RFC as follows:

> [T]he claimant has the residual functional capacity to lift and carry fifty pounds occasionally and twenty-five pounds frequently. During an eight-hour day, he can sit, stand and walk for up to six hours. Furthermore, he is limited to performing only simple, routine, repetitive work requiring no more than fourth grade level in reading, writing and arithmetic. Finally, the claimant is capable of only limited interaction with the general public.

Tr. 602. The ALJ found Howard unable to perform his past relevant work at step four, but found that he could perform significant work in the national economy at step five. Tr. 606. The ALJ therefore found Howard not disabled. Tr. 607.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.*, *citing Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

The district court's remand order directed the ALJ:

> Although the ALJ may consider anything else he believes necessary, I order that the following issues are addressed at a minimum: (1) Dr. Stadtlander's opinion and other evidence concerning whether Howard has a thrombus and its effect on him; (2) the opinions of the DDS doctors concerning Howard's postural and environmental limitiations; (3) Howard's credibility; (4) the lay witnesses' testimony; and (5) vocational expert testimony concerning Howard's math and reading limitations on his ability to perform specific jobs, as well as any other changes in Howard's residual functional capacity after the ALJ addresses the other issues.

Tr. 630. Deviation from this order in subsequent administrative proceedings "is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 885-86 (1989).

5 - OPINION AND ORDER

Howard contends that the ALJ did not properly address the order. Specifically, Howard contends that the ALJ improperly evaluated medical evidence pertaining to his alleged thrombus, failed to develop an ambiguous record, and improperly assessed lay witness testimony. Finally, Howard asserts that the ALJ made step five findings based upon unsubstantiated evidence.[3]

## I.    Medical Source Statements

### A.    Thrombus

The district court previously found "[t]he record concerning the possible thrombus not clear" (tr. 623) and instructed the ALJ on remand to address Dr. Stadtlander's opinion and other evidence "concerning whether Howard has a thrombus and its effect on him." Tr. 630. Upon full review of the administrative record on remand, the ALJ presently found no such impairment. Tr. 601. Howard now claims that the ALJ was precluded from finding that "the thrombosis was nonexistent after the District court concluded that the record was unclear on this issue." Pl. Reply Br. 1.

In order for a claimant to obtain disability benefits, the claimant must show that a "medically determinable" impairment causes his disability. 20 C.F.R. §§ 404.1505, 404.1508, 416.905, 416.908. If a medically determinable impairment does not exist, no finding of disability may be made. *Id.*, *Fair v. Bowen*, 885 F.2d 597, 602 n.1 (9th Cir. 1989). The ALJ is responsible for evaluating medical evidence and conflicting reports. *Batson*, 359 F.3d at 1195.

The ALJ's May 2006 opinion reviewed the medical record regarding the alleged thrombus in detail. Tr. 601. The ALJ first noted a January 11, 2000, MRA (magnetic resonance

---

[3] Howard does not challenge the ALJ's assessment of his credibility.

6 - OPINION AND ORDER

angiogram),[4] which treating physician Dr. Stadtlander "opined was suggestive of an intraluminal thrombus or an artifact of no significance." *Id.* The ALJ discussed neurologist Dr. Phipps' January 31, 2000 report which "noted the apparent filling defect, but diagnosed the claimant simply with syncope secondary to thrombus or seizure." *Id.* The ALJ subsequently noted that treating physician Dr. Cha later reported that Dr. Phipps "had changed his opinion and now believed that the claimant's "filling defect" was an artifact[5] of the study." *Id.*

The ALJ also discussed other test results conducted between February 2000 and July 2001, which did not show a thrombus. Specifically, the ALJ noted that neurologist Dr. Zivin found that a May 2001 MRA showed no abnormalities:

> Dr. Zivin apparently confused or misidentified some of the imagery. He refers to the brain MRI of May 2001 as having no signs of abnormalities, and then recites that "the brain MRI study of the same date" reveals diminished filling in the right posterior cerebral artery (Exhibit 13F:2). In fact the MRA performed in January 2000 showed the filling defect. Moreover, a *repeat* MRA performed in May 2001 was *negative* (Exhibits 6F: 11 and 7F: 16).

Tr. 601 n. 2 (all emphasis original). The ALJ found that "no additional or more recent medical records were found in the file concerning the claimant's so-called 'thrombus.'" *Id.* In summary, the ALJ concluded that Howard's treating physicians considered the structure identified in cerebral artery imaging studies an "artifact" and found no abnormalities in other diagnostic tests.

---

[4]An MRA is a magnetic resonance study of blood vessels. *See* http://www.webmd.com/heart-disease/magnetic-resonance-angiogram-mra (last visited February 26, 2006).

[5]An "artifact" is "anything extraneous, irrelevant, or unwanted, such as a substance, structure, or piece of data or information. In radiologic imaging, spurious electronic signals may appear as an artifact in an image with as much strength as the signals produced by the real objects, thereby confusing the radiologist and the results of any examination." Kenneth N. Anderson et al. eds., *Mosby's Medical, Nursing, & Allied Health Dictionary* ( 5th ed. 1998).

7 - OPINION AND ORDER

Tr. 601. The ALJ found the alleged thrombus "not medically determinable," *Id.*, and the record supports this finding.

Howard's argument that the ALJ improperly evaluated the administrative record regarding the alleged thrombus is incorrect. The district court instructed the ALJ to address that the "dates and statements concerning what particular reports say do not appear to be accurate and need clarification." Tr. 624. The ALJ's discussion provides the appropriate dates and clarifies ambiguities. The ALJ, therefore, appropriately complied with the remand order[6] and his finding that the alleged thrombus is not a "medically determinable" impairment is affirmed.

### B.     The ALJ's Duty to Develop the Medical Record

Howard also asserts that the ALJ failed to comply with the remand order because the ALJ (1) "failed to summon" Dr. Stadtlander to the hearing and (2) should have ordered updated RFC assessments. Pl. Opening Br. 17-18. While the district court previously `noted that the record did not contain substantial evidence justifying rejection of Dr. Stadtlander's work opinion (tr. 624), the court's remedy did not order the ALJ to "develop the record." Tr. 630.[7] Instead, the court ordered the ALJ to properly address the record before him. *Id.*

An ALJ's duty to develop the record is triggered when ambiguities arise. *Mayes v.*

---

[6]While the ALJ was not specifically directed in the remand order to further develop the record to assess whether Howard had a thrombus, the ALJ did have pages 319-329 of the administrative record available to him. That portion of the record contains MRI reports that clearly corroborate the ALJ's conclusion regarding the alleged thrombus. On the other hand, the district court, in its remand order, noted that the court's copy of the administrative record was missing those pages. Tr. 623.

[7]This court in fact found that the ALJ was not obliged to call a medical expert to the hearing. Tr. 621.

8 - OPINION AND ORDER

*Massinari*, 276 F.3d 453, 459-60 (9th Cir. 2001), *citing Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ may develop the record by ordering a consultative examination or by contacting treating medical sources. 20 C.F.R. §§ 404.1512(d), 416.912(d). In this case, the Commissioner previously ordered consultative examinations. Tr. 420-25, 455-59.

The ALJ also attempted to contact a treating medical source when he wrote to Dr. Stadtlander on February 23, 2006, asking if Dr. Stadtlander completed the July 30, 2000, work excuse. Tr. 804. The ALJ noted in his decision that Dr. Stadtlander did not respond. Tr. 604n.3. The fact that Dr. Statlander failed to respond did not trigger some additional responsibility on the ALJ to develop the medical record in light of his review of the record before him.

Regarding Howard's second submission, RFC assessments are the province of the Commissioner, not a physician. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). If proceedings reach an ALJ, the ALJ is responsible for making the RFC assessment. 20 C.F.R. §§ 404.1546(c), 416.946(c). Howard's argument that the ALJ should have ordered additional RFC assessments from reviewing physicians is not based upon the proper legal standards.

**B.     Reviewing Physicians**

The district court found that the ALJ did not properly explain his rejection of all limitations assessed by reviewing physicians. Tr. 624. The court therefore ordered the ALJ to address "the opinions of the DDS doctors concerning Howard's postural and environmental limitations." Tr. 630. Howard now claims the ALJ failed to comply with this order by ignoring postural and environmental limitations assessed by reviewing physicians. Pl. Opening Br. 17-18. Howard specifically claims the ALJ should have evaluated postural limitations stemming from the date of his application and that the ALJ erroneously substituted his opinion for that of a

medical professional.

///

### a. Postural Limitations

The ALJ noted that DDS reviewing physicians found that Howard could perform medium work in August 2000, and light work in April 2001. Tr. 606. The ALJ concluded that "a review of the medical record shows the claimant has no current impairment that would reasonably limit his ability to lift and carry medium loads." Tr. 602. The ALJ's RFC assessment stated that Howard could lift 50 pounds occasionally and 25 pounds frequently. These limitations constitute "medium" work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

The ALJ noted Howard's normal recovery from lumbar surgery and treating physician Dr. Waller's August 1999 work release without restrictions. Tr. 600. The ALJ rejected a July 30, 2002, "work excuse" allegedly submitted by treating physician Dr. Stadtlater because of internal inconsistencies and because Dr. Stadtlander did not determine Howard's recovery complete at that time. Tr. 605, citing tr. 346. The ALJ is entitled to reject physician opinions unsupported by clinical notes. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005), *citing Tonapetyan*, 242 F.3d at 1149.

The record does not suggest further lifting restrictions. The ALJ's analysis properly accorded greater weight to the appropriately supported assessments submitted by Howard's treating physicians. *Id.* The ALJ's medium-level lifting restriction is supported by the record and is affirmed.

### b. Environmental Limitations

10 - OPINION AND ORDER

The ALJ found that the medical record does not show any impairment necessitating environmental limitations, other than restricted public contact. Tr. 606. Howard points to no evidence supporting additional environmental limitations and this court finds no such limitations suggested by the record.

          c.      **Conclusion: Reviewing Physicians**

As noted, the ALJ is responsible for reviewing conflicting medical opinions. *Batson*, 359 F.3d at 1195. Such review does not constitute substituting his own opinion for medical evidence. The district court did not order the ALJ to include all reviewing physician limitations. The ALJ appropriately accorded greater weight to the properly supported opinions of treating physicians Drs. Waller and Cha, discussed above. The ALJ's analysis of the reviewing physicians' opinions is affirmed.

**II.     Lay Witness Testimony**

The district court noted that the ALJ may reject lay witness testimony inconsistent with the medical evidence, but concluded that the ALJ did not give reasons germane to each witness (Tr. 627) and ordered the ALJ to properly address this testimony. Tr. 630. Howard now claims the ALJ improperly rejected testimony submitted by numerous lay witnesses, though he does not directly identify these witnesses. Pl. Opening Br. 18-19.

The ALJ discussed lay witness submissions: "[T]heir observations rarely concern any of the claimant's alleged physical limitations and primarily focus on his mental symptoms. As noted . . . there is insufficient evidence substantiating a medical cause for these mental

11 - OPINION AND ORDER

symptoms[.]" Tr. 604.[8]

The ALJ may find lay witnesses not credible if their testimony is inconsistent with the medical record. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ correctly noted that the medical record does not establish that Howard experienced a thrombus or any other medically determinable impairment that would cause the symptoms reported by the lay witnesses. Tr. 604. The ALJ's rejection of aggregated lay testimony when medical evidence does not support the collected assertions is appropriate. *See Id.* at 512. The ALJ's reasoning constitutes substantial evidence. *Id.* The ALJ thus complied with this court's remand order, his finding is based upon the record, and it is therefore affirmed.

### III. The ALJ's Step Five Findings

Howard finally contends the Commissioner failed to meet his burden of establishing that he may perform work in the national economy at step five. Howard has failed to show error in the ALJ's RFC assessment for the reasons above. The ALJ appropriately reviewed the medical evidence and the testimony of lay witnesses. The ALJ's RFC and subsequent questions to the vocational expert are thus based upon Howard's adequately supported limitations.

Howard now contends the VE's testimony lacked foundation and should be disregarded under *Daubert v. Merrell Dow Pharm., Inc.*, 509 US 579, 598 (1993). In *Daubert*, the Supreme Court ruled on the prerequisites for admissibility in federal trials of purported scientific evidence under Rule 702 of the Federal Rules of Evidence. *Id.* Under Rule 702, a district court judge must

---

[8]The ALJ also references Howard's drug usage, which Howard challenges. Discussion of this reference is unnecessary in light of the ALJ's finding that no medical evidence supports the lay witness' testimony.

ensure that a purported expert's opinion rests on a reliable foundation and is relevant. *Id.* Howard contends the VE's testimony regarding the number of jobs in each occupation is inadmissible because the ALJ did not ensure that it was based on a reliable foundation.

This argument cannot be sustained because *Daubert* and Rule 702 have no application in the context of administrative hearings before an ALJ. An ALJ may receive evidence at such hearings even though the evidence would not be admissible in court under the rules of evidence used by the court. 20 C.F.R. §§ 404.950(c), 416.1450(c). The VE's expertise provides the necessary foundation and no additional foundation is necessary. *Bayliss*, 427 F.3d at 1218 n. 4.

Although Howard argues at length that *Bayliss* was incorrectly decided, he fails to offer any grounds by which the ALJ can avoid its holding. Before the hearing, Howard submitted letters indicating that the U.S. Department of Labor Bureau of Labor Statistics and the Occupational Employment Statistics unit of the Oregon Employment Department do not compile or publish data on the numbers of jobs in the state or national economy by DOT occupation codes. Tr. 91-92. Howard's argument that the ALJ erred by failing to address this evidence cannot be sustained. Whether these agencies have data regarding job numbers is not an issue in this case. The letters do not establish that the VE lacked a basis for her opinion at the hearing. The VE could form such an opinion from any of the bases of her expertise, including other published sources, education, personal research or her experience. This court again recognizes that the VE's expertise provides foundation for her opinion. *Bayliss*, 427 F3d at 1218.

In summary, the ALJ's finding that Howard could perform work in the national economy is based upon an adequate RFC assessment and supported by appropriate vocational testimony.

13 - OPINION AND ORDER

These findings are affirmed.

## CONCLUSION

The Commissioner's decision that Howard is not entitled to benefits under Titles II and XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Dated this 7th day of March, 2008.

    /s/ Paul Papak
Paul Papak
United States Magistrate Judge